[No. 5,981.]

# HARDING v. MINEAR.

SUPPLEMENTAL ANSWER.—A motion to file a supplemental answer is addressed to the sound legal discretion of the Court; and its ruling, in allowing it, will not be regarded as error, unless there should be an abuse of discretion.

ID.—ATTACHMENT—BANKRUPTCY.—Accordingly, where property of the defendant had been attached, more than four months before the filing of a petition in bankruptcy by him, and had been released by the giving of an undertaking under § 555 of the Code of Civil Procedure: *Held*, that, had the property not been released, the plaintiff would have been entitled to a judgment for the enforcement of his attachment lien, and that he was equally entitled to the benefit of the undertaking given as a substitute for the property; that it was, therefore, not error in the Court to refuse the defendant leave to file a supplemental answer, which might deprive the plaintiff of the benefit of the undertaking.

APPEAL from a judgment for the plaintiff, in the Fifteenth District Court, in and for the City and County of San Francisco. DWINELLE, J.

The facts are stated in the opinion.

*Greathouse & Blanding*, for Appellants.

It was error to refuse to permit defendant to file his supplemental answer. He had a right to plead his discharge, and the only way of doing so was by supplemental answer. (Code Civ. Proc. § 464; *Lyon* v. *Isett*, 34 N. Y. [Superior] 46; *Fellows* v. *Hall*, 3 McLean, 282.)

It is admitted that, where there is an attachment lien which is not dissolved by the adjudication in bankruptcy, the Court may proceed for the purpose of enforcing the lien; but if the defendant pleads his discharge, no personal judgment, or judgment that can be enforced out of other property, can be entered. (*Bates* v. *Tappan*, 99 Mass. 376; *Truitt* v. *Truitt*, 38 Md. 27; *Roberts* v. *Wood*, 38 Wis. 69.) The refusal to permit the defendant to file a supplemental answer was unquestionably prejudicial. The judgment is personal, in the ordinary form, as if defendant had never been discharged from the debt; and his property, whether acquired before or after the bankruptcy proceedings, is liable to be seized. The judgment cannot be modi-

fied, because the facts are not before the Court. (*Eller* v. *Jeans*, 26 Cal. 278; *Luther* v. *The State*, 27 Ind. 40; *Bagley* v. *Eaton*, 10 Cal. 149.) No judgment of any kind ought to be entered against the defendant. The cases of *Leighton* v. *Kelsey*, and *Reed* v. *Bullington*, cited by respondent's attorneys, go simply to the point that a State Court may, if there is no injunction from a Bankruptcy Court, proceed to enforce subsisting liens in pending actions. The other case, *Holyoke* v. *Adams*, (as we will presently attempt to show) is not in point; but, if held otherwise, we submit that the weight of authority is against it. (Drake on Attachments, § 323 b; *Carpenter* v. *Turrell*, 100 Mass. 452; *Hamilton* v. *Bryant*, 114 Id. 543; *Fickett* v. *Durham*, 119 Id. 159; *Loring* v. *Eager*, 3 Cush. 190; *Gass* v. *Smith*, 6 Gray 114–5; *Payne* v. *Able*, 7 Bush, [Ky.] 348; *Martin* v. *Kelburn*, 12 Heisk. [Tenn.] 322; *Odell* v. *Wooten*, 38 Ga. 225; *Bank of Bellows Falls* v. *Onion*, 16 Vt. 471; *Haggerty* v. *Morrison*, 59 Mo. 324; *Viossa* v. *Weed*, 22 La. An. 218; *Fox* v. *Weed*, 21 Id. 58.)

In California, the precise point has not been decided, but the principles laid down in the cases go far to sustain our views. (*Imlay* v. *Carpentier*, 14 Cal. 172; *Franklin* v. *Stearn*, 44 Id. 171.) It is a general rule that the liability of sureties is *strictissimi juris*, and should not be extended by construction. (*Miller* v. *Stewart*, 9 Wheat. 702; *United States* v. *Boyd*, 15 Peters, 208; *McCloskey* v. *Cromwell*, 11 N. Y. 598.)

The case of *Holyoke* v. *Adams*, as reported in 59 N. Y., does not properly present the facts; and an examination of the case, as reported in 1 Hun, 223, will show that it is not in point.

*E. B. Drake*, for Respondent.

The motion to file a supplemental answer was addressed to the sound discretion of the Court; and the same reasoning would apply against the offer in this case, as was successfully urged in the case of *Holyoke* v. *Adams*, 59 N. Y. This Court has already decided the principle involved in this case in *Sac. Bank* v. *Hadley*, 2 L. J. 471.*

*NOTE BY REPORTER.—The judgment in this case was affirmed from the bench

If the judgment goes against the defendant for the whole amount claimed, he will not be injured; because, after the attached property and undertaking on release have been exhausted, he can apply for a perpetual stay of execution. (*Monroe* v. *Upton*, 50 N. Y. 593.)

If the plaintiff is not entitled to the usual judgment, the Court can order it to be modified. (*Atherton* v. *Fowler*, 46 Cal. 320; *Brady* v. *Kelley*, 52 Id. 371; *Celis* v. *Maclay*, filed June, 1879; Code Civ. Proc. § 45.)

Department No. 1, McKEE, J.:

Property of the defendant was taken by a writ of attachment issued in this action at the commencement thereof, and upon the defendant giving an undertaking with sureties, as required by § 555 of the Code of Civil Procedure, the attachment was discharged and the property released.

More than four months after the commencement of the action, the defendant instituted proceedings in bankruptcy; and when he had received his certificate of discharge, he applied to the Court below in this action for leave to file a supplemental answer, setting up his discharge in bankruptcy as a bar to the further prosecution of the action. The Court denied the motion, tried the case on the issue joined by the complaint and answer on file, and gave judgment against the defendant; from which the defendant appeals, and assigns as error the action of the Court in denying his motion to file the supplemental answer.

Section 464 of the Code of Civil Procedure declares that the plaintiff and defendant respectively may be allowed, on motion, to make a supplemental complaint or answer, alleging facts ma-

without an opinion. We subjoin so much of the judgment, (as reported in 2 Pac. C. L. J. 470) as shows the point decided:

"The cause having been heretofore tried, etc., * * * it is ordered and adjudged by the Court, that the plaintiff have and recover of defendant the sum of, etc., * * * to be enforced in the manner hereinafter stated; * * * and it appearing that the defendant was, in November, 1877, discharged from his debts and liabilities, by proceedings in bankruptcy, then pending in the District Court of the United States, * * * it is further considered, ordered, and adjudged, that this judgment be enforced solely out of the property attached, etc.; * * * but the plaintiff shall be at liberty to pursue said attached property, and all bonds and undertakings for the possession thereof."

terial to the case occurring after the former complaint or answer. Construing the section of the New York Code applicable to this subject, the courts of that State have decided that the section was intended as a substitute for the former practice in actions at law of a plea *puis darrein continuance.* In *Hoyt* v. *Sheldon* (4 Abbott, 54), it was said that a supplemental answer shall be given in actions at law, in all cases in which a plea *puis darrein continuance* could have been put in as a matter of right. (*Garner* v. *Hanna,* 6 Duer; *Slauson* v. *Englehart,* 34 Barb.; *Bates* v. *Fellows,* 4 Bosw.)

It was the practice in common-law courts, after issue joined in an action, to give a day for the parties to appear in Court, by an entry upon the record. This was called the continuance, because thereby the proceedings were continued without interruption from one adjournment to another. (Blackst. Com. vol. 3, p. 316.) In progress of law, the entry on the record became mere matter of form, and might be made at any time to make the record complete; and subsequently, by an act of Parliament, it became unnecessary to make entry of the continuances at all. But if a new matter of defense arose in a case after issue joined, and between the last continuance and the day set for the reappearance of the parties, the defendant was entitled, on the day for reappearance, to plead it as a matter which had happened after the last continuance, or—as the practice was modified by subsequent legislation—after the last pleading. The effect of such a plea, when pleaded, was not to impugn the right of action altogether, but only the right of maintaining it : *i. e.* since the period when matter of defense arose. The plea itself was considered as a waiver of all previous pleas, and the cause of action was admitted to the same extent as if no other defense had been made but that contained in such a plea. (*Wallace* v. *McConnel,* 13 Peters, 136; *Yeaton* v. *Lynn,* 5 Id. 223; *Spofford* v. *Woodruff,* 2 McLean, 191.)

But the plea had to be allowed by the Court. It was in the breast of the Judge at Nisi Prius whether he would accept it or not; therefore, it was necessary for the party to make it appear to the Judge that it was a true plea. (Bacon's Abridg. 7, 688.) Thus, in *Abbot* v. *Rugelsby,* 26 Car. 11, cited in *Bunker*

v. *Ash*, 9 Johns. 250, it was held that he that offers a plea *puis darrein continuance* at the Nisi Prius must prove it there ; for unless he make it appear to the Judge that it is a true plea, it is in his discretion whether he will allow it or not, but may proceed to try the cause. And in *Hawkins* v. *Moore*, Cro. Car. 261, it is said that such a plea is receivable at the discretion of the justices, if they perceive any verity in it. That practice was followed in the common-law courts until the time of the Codes. Say the Court, in *Morgan* v. *Dwyer*, 10 Johns. : " It rests in the discretion of the Court to receive such a plea, or not, even after more than one continuance, between the time that the matter of the plea arose and the coming in of the plea ; and this discretion will be governed by circumstances extrinsic, and which cannot appear on the face of the plea." And in *Curry* v. *Smith*, 50 Me., it is said : "Whether the defendant should be allowed to plead *puis darrein continuance* is a matter of discretion with the Court. The exercise of this discretion *is never matter of exception*." (See also *Rowell* v. *Hayden*, 40 Me. 586 ; *Wilson* v. *Hamilton*, 4 S. & R. 238 ; *Lyon* v. *Marclay*, 1 Watts, 261 ; *Juff* v. *Gibbon*, 19 Wend. 240.) This discretion could not be invoked until after the plea had been served, and then it was exercised on a motion to set aside. (7 Bacon's Abridg. 688 ; *Morgan* v. *Dwyer*, 10 Johns. 249.)

But the Codes produced a change in the practice, and in the name of the plea, so that now, instead of filing it, or its substitute—a supplemental answer—as a matter of course, and moving after it has been served to set it aside, application must be made, under the Code, on motion, or order to show cause, for leave to file it at all. The right to file a supplemental answer is, therefore, not an absolute and positive right, but *is made to depend on the leave of the Court in the exercise of a legal discretion*. And, say the Appellate Court of New York, the Court must grant leave, unless the motion papers show a case in which the Court may exercise a discretion as to granting or withholding leave. * * The application may be refused, if the new defense, although legal, is *inequitable*. (*Medbury* v. *Swan*, 46 N. Y. 200 ; *Holyoke* v. *Adams*, 59 Id. 233.)

Apply this principle to the proceedings had in the case in

hand, and it is difficult to resist the conclusion that it would have been inequitable to have allowed the defendant in the case to have interposed his discharge in bankruptcy as a plea in bar to a further prosecution of the action : for the plaintiff had, by his diligence, obtained an attachment lien upon the property of the defendant. That lien was acquired more than four months before the defendant commenced his proceedings in bankruptcy, and according to the provisions of the Bankrupt Law the attachment was not dissolvable by the discharge of the defendant. The only effect of the discharge was to limit the judgment recoverable in the attachment suit. The plaintiff was entitled at least to a judgment for the enforcement of his attachment lien. (*Dagget* v. *Cook*, 37 Conn. 345 ; *Bates* v. *Tappan*, 99 Mass. 376; *Doe* v. *Childress*, 21 Wall, 642 ; *Sacramento Bank* v. *Hadley*, 2 P. C. L. J. 470.) The case in hand does not fall within this class of cases, only because the attachment was discharged, and the attached property released ; but it was released upon giving the undertaking required by law for that purpose. The undertaking was therefore given as a substitute for the attachment lien, and to secure a redelivery of the attached property or payment of its value, to be applied to the payment of any judgment recoverable in the case.

If the proceedings in bankruptcy would not have had the effect, under the Bankrupt Law, of discharging the attachment which had been levied upon the property of the defendant if an undertaking had not been given, they will not have the effect of releasing the undertaking which was given. If it would be illegal or inequitable to deprive the plaintiff of the benefit of his attachment lien, it will be equally so to deprive him of the benefit of that which has been taken in law as a substitute for it. The law, therefore, will not require of a court to permit a supplemental answer to be filed which might produce such injustice. The case of *Holyoke et al.* v. *Adams et al.* is directly in point. In that case, as in the case in hand, attachments were issued and levied upon sufficient property of the defendants, which was released by giving an undertaking with sureties. More than four months after the defendants were severally adjudged bankrupts, and they immediately, after obtaining their

certificates of discharge, moved the Court in which the action was pending for leave to file a supplemental answer, setting up their discharge. Leave was denied, and the Court of Appeals, in closing their decision, say ; " On the whole it seems that the spirit of our own statute and the spirit of the Bankrupt Act will be satisfied, and that injustice will be avoided, if this case shall be put in the class of those in which it is discretionary with the courts to refuse leave to put in a supplemental answer." And in a like case, in which a writ of review had been taken to review a judgment rendered under similar circumstances, the Supreme Court of New Hampshire say ; " Courts will sometimes set aside a plea *puis darrein continuance*, when it is manifestly fraudulent and against the justice of the case. (1 Ch. Pl. 161.) To permit a party to prosecute his writ of review, not for the purpose of reversing an erroneous judgment, but for the sake of preventing the satisfaction of an honest debt, and for discharging a lawful security, by interposing proceedings in bankruptcy contrary to any beneficent design of the law, would be to lend the aid of the Court to the consummation of gross injustice." (*Zollar* v. *Janvrum*, 49 N. H. 18.)

It follows that a motion to file a supplemental answer is addressed to the sound legal discretion of the Court, and its ruling in allowing or refusing it will not be regarded as erroneous, unless there should be an evident abuse of discretion. We see no abuse of discretion in this case, and the judgment is affirmed.

ROSS, J., and McKINSTRY, J., concurred.